SARTAIN, Judge.
Plaintiffs filed this action under C.C.P. Article 1871 et seq. (Declaratory Judgment Act) seeking to be recognized as the owners of 29 acres of land situated in Section 14, Township 6 South, Range 1 East, Greens-burg Land District, Parish of East Baton Rouge, Louisiana. They first claim to be owners by record title and in the alternative assert their claim to ownership by ten and thirty year possession.
The defendants answered, denying plaintiffs’ claims and asserting that defendants be declared and recognized as the record owners of the property.
The trial court rendered judgment in favor of the plaintiffs and against the defendants decreeing the plaintiffs owned the property by virtue of record title. Even though the judge a quo’s decision was based on title rather than prescription, he expressed the opinion that the evidence presented relative to acts of possession by both parties was inconclusive.
Inasmuch as we agree with the decision of the trial court that plaintiffs should prevail by virtue of having set forth a better title,[1] we do not deem it necessary to detail the testimony of the witnesses relative to the acts of possession urged by both parties.
Plaintiffs are the owners of a tract of land originally described as containing 75 acres more or less. Defendants are the owners of a tract of land originally described as containing 203 acres. Various sell offs occurred from both tracts but these transactions throw little if any light on the present controversy.
*761 The properties of plaintiffs and defendants are situated between a “V” made by the interception of Blackwater Bayou with the Comite River. The Comite River runs from a northeasterly to a southwesterly direction. The Blackwater Bayou runs from a northerly to southerly direction before emptying into the Comite River. Near the bottom of the “V” is located a tributary of Blackwater Bayou which runs from west to east from the main stream of the Comite River to a point on the Blackwater Bayou just north of where it empties into the Comite River. This tributary is referred to in the testimony as the “upper fork” of Blackwater Bayou. Thus, it is seen that the upper fork of Blackwater Bayou creates an “island” at the bottom of the “V”. The western boundary line of the Ronaldsons is the Comite River. The eastern boundary of the Hauseys’ property is generally marked by the main stream of Blackwater Bayou. The common boundary between the two tracts bisects the "V” from north to south. There is no dispute concerning this boundary north of the upper fork of Blackwater Bayou. However, if the common boundary line were extended south of the upper fork of Blackwater Bayou, it would also bisect the island. The property now in dispute is the western 29 acres of the island. It is not disputed by the Ronaldsons that the Hauseys own the eastern 18 acres of the island. The Ronaldsons state that the property in question was never, to their knowledge, referred to as an “island”. On the other hand, all of the Hauseys’ witnesses make repeated reference to the “island”.
The trial judge was correct when he described the land in question as “jungle-type, mucky, swampy” because that was its character prior to the dredging of the Comite River for drainage purposes.
It was not until the Department of Public Works of the City of Baton Rouge and the Parish of East Baton Rouge commenced the drainage improvement program of the Comite River that any dispute between the parties came to light. The parish authorities concluded that the property fronting on the east side of the Comite River along the 29 acres in question belonged to the Ronaldsons and the frontage of the 18 acres along the river belonged to the Hauseys. Accordingly, the Parish entered into a voluntary agreement with the Hauseys concerning the frontage along the 18 acres and entered an expropriation suit against the Ronaldsons for the necessary frontage along the 29 acres, plus other acreage of the Ronaldsons fronting on the Comite River.
Plaintiffs contend that they did not know the Ronaldsons were claiming ownership of the 29 acres until they inquired of the Parish by what authority it was proceeding to dredge the Comite River along the 29 acre tract. When informed that they had obtained it by expropriation from the Ronaldsons, the Hauseys instituted this suit.
The chains of title to the Hausey and Ronaldson tracts go back to a common ancestor, namely, J. E. Blouin, et al. In our opinion an examination of the deeds in the respective chains clearly supports the conclusion that plaintiffs have a better title to the property in question.
With respect to the Ronaldson property, the abstract of title shows that on February 20, 1904, Louis F. Deer acquired from Joseph E. Blouin, et al., the property described as follows:
“A certain tract of land situated in the Parish of East Baton Rouge on the east bank of the Comite River containing Two Hundred and Three (203) acres being part of Sections Fourteen (14) and eighty (80) in T-6-S-R-l-E-Greense-burg Land District; the land herein conveyed (bo-) bounded according to plat made by P. J. Skolfield, Surveyor, hereto annexed, north by the Hooper Road, east by lands of vendors, south by upper fork of Blackwater Creek and west by the Co-mite River; being part of the same acquired by vendors by inheritance and by purchase as per act of record in Book No. 28 page 410 Conveyance Records of this Parish.” (Emphasis ours.)
*762 The plat made by P. J. Skolfield, Surveyor, was not annexed to the deed nor could it be located by the parties to this litigation.
On January S, 1905, Louis F. Deer sold to Ronaldson and Puckett Company, Ltd. the same property which was then described as follows:
“Another tract or land adjoining the above containing two hundred and three acres, being part of Sections 14 and 80 in said Township and being bounded according to said plat North by Hooper Road, East by lands of Blouin et als., South by upper fork of the Blackwater creek and West by the Comite River; the property herein conveyed being the same acquired by present vendor from Blouin et als., by acts of record in Book 30 folio 611 and Book 31 folio 333 of the conveyances of this parish.” (Emphasis ours.)
The Hausey chain of title shows that on June 19, 1915, John Russell Hausey acquired from Mrs. Etta Blouin Jolly, et al. property described as follows:
“That certain tract of land situated in the tenth ward of the parish of East Baton Rouge, said State, and being a portion of the original tract designated on the Parish Map of East Baton Rouge as ‘J. D. Blouin, 862 acres’, lying on the East of the Comite River, said map being that made by Kaiser and Swensen, 1894, the said tract herein conveyed and sold being all that remains of sections Eighty (80) and Fourteen, Township Six, Range 1, East Greensburg Land District of Louisiana, comprising about seventy-five acres (75) more or less and being bounded on said parish map as follows, to-wit: North by the Hooper Road, South by the Comite River, East by W. T. Smith, J. A. Edwards, and R. W. Ware, and West by J. D. Blouin (on said map), now the property of Ronaldson & Puckett Co., Limited.” (Emphasis ours.)
Based principally on the above quoted legal descriptions, the trial judge concluded that Ronaldson and Puckett, Company, Ltd. bought 203 acres in Sections 14 and 80 of Township 6 South, Range 1 East, Greens-burg Land District, which lands were bounded on the "south by the upper fork of the Blackwater Creek”. This is confirmed by the fact that the property purchased from Blouin, et al. by Louis F. Deer was likewise bounded on the “south by upper fork of Blackwater Creek”.
Neither chain of title reflects that Blouin, et al. conveyed any other property in Sections 14 and 80 that would affect the Hausey and Ronaldson properties.
An examination of the Hausey chain of title clearly shows that when John Russell Hausey purchased his 75 acres, more or less, it was located in Sections 80 and 14 and was “all that remains” of the Blouins’ property in those sections. This deed particularly recites that the 75 acres were bounded on the "south by the Comite River”.
Defendants argue that plaintiffs had failed to have this property now in question surveyed so as to clearly define the boundaries thereof. The testimony of a majority of the witnesses makes it amply clear that what is referred to as the “upper fork of the Blackwater Creek” was in existence in the early 1900’s when the last portion of the property left the Blouins. It is our opinion that the “upper fork of Blackwater Creek” is a clearly definable monument and marks the southerly most boundary of the Ronaldson property.
A review of the record and the plats attached thereto, including the original township plat, discloses how inadvertently this controversy arose. For the official township plat shows the contested property as being Lot 9 and the balance of the island as Lot 10. Prior to the improvement of Comite River the land was “jungle-type, mucky, swampy”. Very little if any attention was paid to it. However, it undoubtedly was used in the only manner in which it could be, that is, by the sale of timber therefrom or the grazing of cattle during *763 periods when the property itself was not inundated.
It is quite reasonable to see how the defendants could consider their land as encompassing Lot 9 (29 acres) by the simple extention in a southerly direction of their common boundary with the Hauseys. It is also easy to see how the Tobin Aerial Map of East Baton Rouge Parish could draw the same conclusion.
Nevertheless, several unalterable facts remain, namely: (1) defendants’ original purchase was bounded on the south by the upper fork of Blackwater' Creek; (2) plaintiffs purchased all of their vendors’ property that remained in Sections 14 and 80. If the Blouins did not sell to Mr. Deer and Mr. Deer did not sell to Ronald-son and Puckett Company, Ltd., title remained with the Blouins, who conveyed it by general description to Mr. Hausey.
Defendants offered the testimony of an expert map maker to the effect that it was necessary for the 29 acres to be included in the defendants’ ancestor’s original purchase for it to contain 203 acres. This witness also testified that plaintiffs in acquiring 75 acres, more or less, actually acquired 114 acres and if the contested 29 acres be now added, plaintiffs would have in fact acquired 143 acres or almost double the acreage called for in their deed. To this argument we must cite Bickham v. Bankston, 210 So.2d 88 (1st La.App., 1968), which held that natural boundaries mentioned in a legal description will prevail over any quantity calls.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellants’ costs.
Affirmed.

. C.C.P. Article 3654
When the issue of ownership of immovable property or of a real right is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right is so presented, the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right in a possessory action, unless the adverse party makes out his title thereto; or
(2) Who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action.